## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Criminal No. 06-102 (JDB)** |
| **ZION CLARKE,** | |
| **RICARDO DEFOUR,** | |
| **KEVON DEMERIEUX,** | |
| **ANDERSON STRAKER,** | |
| **WAYNE PIERRE,** | |
| **CHRISTOPHER SEALEY, and** | |
| **KEVIN NIXON,** | |
| | |
| **Defendants.** | |

## MEMORANDUM OPINION

Prior to trial, defendants sought dismissal of this case based on the contention that this Court lacks jurisdiction over the hostage taking offenses charged because the victim, Balram Maharaj, although possessing a certificate of naturalization and U.S. passport at the time of the offenses, allegedly was not qualified for U.S. citizenship when he was naturalized, rendering his citizenship *void ab initio*. The Court denied that motion, holding that "[8 U.S.C.] § 1451 sets forth the exclusive process for declaring the citizenship of a naturalized person void and one's citizenship remains valid until an order setting aside citizenship has been issued in compliance with § 1451," and further that, in the absence of a revocation order, Maharaj's "certificate of naturalization and U.S. passport conclusively establish that he was, until his death, a citizen of the United States." Memorandum Opinion at 12-13 (filed May 8, 2009) ("Mem. Op."). Hence, the Court also granted the government's motion for an order in limine precluding the defendants from introducing evidence at trial on the matter of whether Balram Maharaj was qualified to become a U.S. citizen. Id. at 18-21.

Defendant Clarke now moves for reconsideration of that decision, on the grounds that the certificate of naturalization and passports are inadmissible hearsay and, furthermore, that the passports are invalid. He argues, in particular, that the Court's admission of those documents into evidence under the public records exception, Fed. R. Evid. 803(8), was incorrect. He requests, in the alternative, leave to introduce Maharaj's immigration file -- the "A File" -- to show that those documents are unreliable because Maharaj was not eligible for U.S. citizenship. Defendant DeFour separately moves for reconsideration of the Court's ruling precluding defendants from introducing evidence challenging Maharaj's qualifications to become a U.S. citizen. For the reasons stated below, the Court will deny the motions.[1]

I.      **Certificate of Naturalization**

Clarke contends that the certificate of naturalization (GX 303-F) is hearsay because it is offered to prove the truth of the matter asserted -- that Maharaj was a U.S. citizen -- but fails to qualify for the public records exception under any of the three categories set forth in Fed. R. Evid. 803(8). See Clarke's Mem. at 3-15. In response, the government contends that the certificate of naturalization is not hearsay under Fed. R. Evid. 801 because it is offered only to show the legal relationship of the parties (i.e., that the United States granted Maharaj U.S. citizenship), in contrast to the truth of the matter asserted therein (i.e., that Maharaj, in fact, satisfied all of the qualifications for U.S. citizenship). Gov't's Opp'n at 11. The government also contends that, even if the certificate is hearsay, it is admissible, inter alia, as a public record setting forth the activities of the agency.

Before examining the terms of Rules 801 and 803(8), the Court pauses to assess other

_____

[1] As a practical matter, all defendants have joined in these motions. The Court's ruling thus applies to all defendants.

2

statutory provisions and case law on the admissibility of certificates of naturalization in district court proceedings. Prior to November 29, 1990, naturalization petitions were submitted for adjudication by a court and, hence, the culmination of a proceeding for judicial naturalization was a decree of the court and the issuance of a certificate of naturalization to the successful petitioner. See generally 7 Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, Immigration Law and Procedure, § 99.03 (Matthew Bender, rev. ed. 2008) ("Immigration Law and Procedure"). The naturalization certificate and underlying judgment were considered by courts to be "complete evidence" -- indeed, "conclusive evidence" -- of the citizenship of one who goes through naturalization proceedings. See Tutun v. United States, 270 U.S. 568, 577 (1926) ("The judgment [granting a naturalization petition] . . . , like other judgments of a court record, is accepted as complete evidence of its own validity unless set aside. It may not be collaterally attacked."); accord Magnuson v. Baker, 911 F.2d 330, 333 n.6 (9th Cir. 1990) ("As a record of a final court decision, a certificate [of naturalization] is conclusive evidence of the court's determination of the litigated issue i.e., citizenship."); In re Mendiola, 647 F. Supp. 839, 842 (S.D.N.Y. 1986) ("A court issues such a certificate only after having entered an order which establishes the person's citizenship," which is "complete evidence of its own validity unless set aside."); In re Olanoff, 44 F.2d 188, 189 (E.D. Pa. 1930) ("the naturalization certificate is the best evidence [of citizenship] under the acts of Congress").

⎯⎯⎯⎯⎯With that background, Congress enacted 8 U.S.C. § 1443(e), which provides that certificates of naturalization issued by the Attorney General shall have the same effect in court as the judicial orders of naturalization. This provision states: "A certificate of naturalization . . . issued by the Attorney General under the authority of this subchapter shall have the same effect in all courts, tribunals, and public offices of the United States, at home and abroad, . . . as a

certificate of naturalization or of citizenship issued by a court having naturalization jurisdiction." Hence, certificates of naturalization issued by the Attorney General also are considered by courts as "conclusive evidence" of citizenship. See Magnuson, 911 F.2d at 333 & n.6; see also 7 Immigration Law and Procedure § 99.04[4] ("Like a court decree, the certificate of citizenship issued by the Attorney General is not subject to collateral impeachment, and unless it is cancelled . . . it must be accepted as establishing the title to citizenship of the person to whom it is issued."). It is odd, then, for defendants to posit that certificates of naturalization are not admissible to prove citizenship on the ground that they are hearsay not falling within any exception to the hearsay rule. Indeed, Clarke and his co-defendants fail to cite any cases holding a certificate of naturalization inadmissible to prove citizenship.

The line of cases recognizing certificates of naturalization as "complete" and "conclusive" evidence of citizenship, and the clear language of § 1443(e), providing for their admissibility in courts of the United States, lead to the inescapable conclusion that, to the extent Rules 801 through 803 are inconsistent with 8 U.S.C. § 1443(e), the more specific provision -- § 1443(e) -- governs and requires that the certificate of naturalization be admitted into evidence. See Fed. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules . . . or by Act of Congress"). But the Court has also determined that there is no inconsistency between § 1443(e) and the rules governing hearsay, for, as explained below, the certificate of naturalization is admissible as a public record setting forth the activities of a federal agency (i.e., the Immigration and Naturalization Service).

As a threshold matter, the Court observes that the certificate of naturalization is necessarily hearsay, contrary to the government's contention that it is only a legally operative verbal act offered to prove a legal relationship. Rule 801 defines hearsay as an out-of-court

statement offered in evidence "to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).

Here, the certificate is offered to prove the truth of two key assertions stated therein -- that

Maharaj took "the oath of allegiance" necessary to become a United States citizen and was duly

"admitted as a citizen of the United States of America."  GX 303-F.  If the oath of allegiance

were not necessary to establish the legal relationship at issue -- that is, Maharaj's legal status as a

U.S. citizen -- the government might have prevailed on its nonhearsay argument.  See United

States v. Bellucci, 995 F.2d 157, 160-61 (9th Cir. 1993) (holding that, where a document is

admitted to prove only the occurrence of a legally significant event -- there, the issuance of an

FDIC insurance certificate to prove the federally insured status of a bank -- rather than the

findings contained in the document, it is not hearsay).  However, as Clarke notes (see Reply at

11), 8 C.F.R. § 337.9 provides that the naturalization is not effective until the citizen has taken

the oath -- and the fulfillment of that requirement is stated on the face of Maharaj's naturalization

certificate.  Hence, the certificate is being used in this trial for the truth of the matter asserted,

and is therefore hearsay.

But the status of the certificate of naturalization as hearsay does not preclude its

admission, for it readily fits within the public records exception.  Rule 803(8) provides a hearsay

exception for:

> Records, reports, statements, or data compilations, in any form, of public offices
> or agencies, setting forth (A) the activities of the office or agency, or (B) matters
> observed pursuant to duty imposed by law as to which matters there was a duty to
> report, excluding, however, in criminal cases matters observed by police officers
> and other law enforcement personnel, or (C) in civil actions and proceedings and
> against the Government in criminal cases, factual findings resulting from an
> investigation made pursuant to authority granted by law, unless the sources of
> information or other circumstances indicate lack of trustworthiness.

Clarke devotes much of his brief to arguing that the certificate fails to qualify under subsection

(B) because it describes matters that were not "observed" by the declarant, and fails under subsection (C) because the certificate contains "factual findings resulting from an investigation" but is impermissibly submitted by the government in this criminal case and lacks circumstances indicating trustworthiness.  See Clarke's Mem. at 5-19; Clarke's Reply at 7-10. But he has offered no persuasive argument rebutting the government's contention that the certificate falls within subsection (A) for records "setting forth . . . the activities of the office or agency."

The government contends that the certificate of naturalization is a record of the Immigration and Naturalization Service ("INS," now the Citizenship and Immigration Services, "CIS") with respect to "making determinations as to and granting certificates of naturalization." Gov't's Opp'n at 10.  Clarke's only rebuttal to this is the conclusory assertion that the certificate does not describe "activities" of the agency and that this exception is limited to "routine" activities such as the recording of receipts or pension records.  Clarke's Reply at 6-7.  The Court need only examine the face of the certificate of naturalization to see that it sets forth an "activit[y] of the office or agency" -- that is, the granting of a petition for naturalization by the Attorney General, a regular activity exercised by the agency.  See 8 U.S.C. § 1421 ("The sole authority to naturalize persons as citizens of the United State is conferred upon the Attorney General."); Magnuson, 911 F.2d at 333 (discussing Attorney General's authority to act on petitions for naturalization).

Furthermore, the guarantee of accuracy of public records admissible under subsection (A) "rests upon an official duty, i.e., a duty imposed by law upon a public official, to make an accurate record," rather than on whether the activity is sufficiently "routine."  See Michael H. Graham, 30B Federal Practice & Procedure: Evidence § 7049 (interim ed. 2006).  Here, the statute clearly reflects the responsibility of the Attorney General (and his designees) over the

activity at issue -- the granting of petitions for naturalization -- and it is generally recognized, in any event, that this is a regular activity of his agency.  Indeed, this Circuit has recognized that a census "register" that reported residents' alien status was admissible as an "official" record based on a legal duty to collect the information.  See Doto v. United States, 223 F.2d 309, 311 (D.C. Cir. 1955).  This Court readily concludes that the certificate of naturalization is admissible as a public record that sets forth "the activities of the office or agency" under Rule 803(8)(A).

As for Clarke's contention that this document must instead be considered under Rule 803(8)(C) on the ground that it contains "factual findings resulting from an investigation" -- that is, that the Attorney General "found" that Maharaj "complied" with all of the naturalization laws -- there is no reason for requiring an additional basis for admitting the certificate.  More significantly, however, the document is not being admitted for the purpose of reporting "factual findings" but rather for the purpose of demonstrating that the Attorney General issued a certificate of naturalization granting Maharaj's petition for naturalization -- an act with legal significance under § 1443(e) in this proceeding regardless of the correctness of the "factual findings resulting from an investigation" by the INS.[2]  See also Mem. Op. at 7-13 (holding that citizenship based on naturalization remains valid unless it is revoked under the exclusive process set forth at 8 U.S.C. § 1451(a)).  In other words, the correctness of the factual finding that Maharaj was qualified for U.S. citizenship is irrelevant to this prosecution.

---

[2] Clarke contends that, if subsection (C) applied, the certificate of naturalization would be inadmissible because it is being offered by the government and was issued in circumstances that "indicate lack of trustworthiness," noting the absence of Maharaj's signature on the agency's copy of the certificate.  See Clarke's Mem. at 15.  On the latter point, as the government notes, there is no requirement that the certificate of naturalization bear the citizen's signature, and testimony was introduced at trial explaining why the agency's copy typically does not bear such signatures. See Gov't's Opp'n at 6 (noting Ms. Krebs' testimony that the agency's copy of the certificate is made before the swearing-in ceremony for logistical reasons).

## II.    The 1995 and 2000 Passports

Clarke also moves to exclude the passports issued to Maharaj on April 10, 1995 and September 28, 2000 (GX 302 and GX 306).  He contends that the 1995 passport is invalid and, hence, inadmissible, because it lacks the signature of Maharaj required to be legally effective.  See Clarke's Mem. at 15-16; see also 22 C.F.R. § 51.4(a) ("A passport book is valid only when signed by the bearer in the space designated for signature . . . .").  He further contends that the 2000 passport is derivatively defective because it was based on the invalid 1995 passport, and that both passports are, in any event, inadmissible hearsay.  Clarke's Mem. at 16.  In response, the government contends that the 2000 passport -- which does bear Maharaj's signature -- stands on its own, based on 22 U.S.C. § 2705, although conceding that the 1995 passport is not valid because it lacked the necessary signature.[3]  See Gov't Opp'n at 2.  The government further contends that the 2000 passport is admissible under Rule 803(8)(A) as a record setting forth "the activities of the office or agency," here the Department of State.

The Court first considers whether the 2000 passport is a valid document for the purpose of proving citizenship.  Under 22 U.S.C. § 2705, the answer is plainly yes.  That section provides:

> The following documents shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction:
>
>     (1) A passport, during its period of validity (if such period is the

---

[3]  Clarke contends that the government thus violated its Brady obligations by failing to disclose the "invalidity" of the 1995 passport.  Clarke's Mem. at 3, 22.  He does not, however, contend that the government failed to disclose the 1995 passport, and the record indicates he has had a copy of the passport since at least April 8, 2009.  Moreover, any alleged nondisclosure is not material to the determination of guilt or punishment because the certificate of naturalization is admissible to prove Maharaj's citizenship (along with the 2000 passport).  Therefore, the Court rejects Clarke's claim of a Brady violation.

maximum period authorized by law), issued by the Secretary of State to a
citizen of the United States.

In other words, § 2705 puts passports in the same status as certificates of naturalization for the

purpose of proving U.S. citizenship.  The Ninth Circuit has persuasively explained that § 2705 is

a "clear instruction from Congress to treat passports in the same manner as . . . certificates of

naturalization in all respects."  <u>Magnuson</u>, 911 F.2d at 334.  Hence, it held that the passport must

be treated as "conclusive evidence of citizenship," and furthermore, consistent with the high

value placed on citizenship and the statutory protections applicable before any revocation may

occur, a passport may not be revoked without a predeprivation hearing, much like the revocation

proceedings required under 8 U.S.C. § 1451(a) for certificates of naturalization.[4]  <u>Id.</u>  at 334-36.

Hence, a passport does not become void or revocable by operation of law because of an alleged

flaw in the record supporting it.  <u>See id.</u> at 335.  Like a certificate of naturalization, it is

presumptively valid until a process is undertaken to revoke it and a final decision to that effect is

subsequently issued.  <u>Id.</u>  Based on these principles, this Court rejects defendants' request to treat

---

[4]  In <u>Magnuson</u>, the Ninth Circuit rejected the Secretary of State's claim that he possessed
inherent authority to revoke an improperly issued passport without a hearing.  In doing so, it
stated:

> Section 2705 grants no revocation power to the Secretary and certainly none
> greater than could be exercised by the Attorney General or a naturalization court.
> As a result, assuming the Secretary can revoke a passport, he can do so only if he
> (a) gives the passport holder an opportunity to be heard prior to revocation, and
> (b) seeks revocation on the basis of fraud, misrepresentation, or some other
> exceptional ground.
> . . . .
> Section 2705 necessarily limits the grounds for revoking a passport to those expressed in
> sections 1451 and 1453.  If we were to rule otherwise, we would accord those who use
> their passports as evidence of their citizenship less protection than those who use other
> documents denoting citizenship.  Such a difference in treatment would contradict the
> "same force and effect" language of section 2705.

911 F.2d at 334-35.

the passport as *void ab initio*. Having been issued by the State Department, and signed by

Maharaj, the 2000 passport provides conclusive evidence of Maharaj's citizenship during the

period of its validity -- that is, from September 28, 2000 to the date of his death.[5] Hence, the

2000 passport must be treated as a valid document.

The only question, then, is whether the 2000 passport is nonetheless inadmissible hearsay.

Like 8 U.S.C. § 1443(e), however, 22 U.S.C. § 2705 is an "Act of Congress" that provides for the

admissibility of the passport into evidence to prove U.S. citizenship notwithstanding the

passport's hearsay status. See Fed. R. Evid. 802 (providing that hearsay rule applies unless

otherwise provided "by Act of Congress"). Moreover, even if the hearsay rule applies to

passports, the 2000 passport, like the certificate of naturalization, is admissible under Rule

803(8)(A) as a public record setting forth the "activities of the office or agency" -- in this context,

the Department of State's granting of passport applications and issuance of passports. In short,

because both the 2000 passport and the certificate of naturalization are admissible to prove

Maharaj's citizenship, the Court rejects Clarke's contention that the government has failed to

prove the citizenship element of the offense, and hence will deny Clarke's motion for

reconsideration.[6]

---

[5] The expiration date of the passport is September 2010. GX 306.

[6] Clarke's memorandum in support of his motion for reconsideration focuses almost exclusively on Maharaj's two passports and the certificate of naturalization (save for a single reference to related exhibits), but his request for relief seeks exclusion of all "supporting documentation of the passport" (GX 303-A through -F), as well as exclusion of supporting documentation for the passport issued to Dinesh Maharaj (GX 305-A through -J). See Clarke's Mot. at 1 and Proposed Order. The supporting documentation is of diminished relevance in light of the Court's ruling on the 2000 passport and naturalization certificate. However, the Court will allow the supporting documentation to remain in evidence under Rule 803(8)(A) as public records setting forth the activities of the Department of State -- that is, for the limited purpose of showing that the agency received and granted Maharaj's applications for passports for himself and his child.

## III. Evidence Concerning Maharaj's Eligibility for U.S. Citizenship

In the alternative, Clarke asks the Court to revisit its earlier ruling precluding defendants from admitting documents from Maharaj's "A file" -- that is, the INS/CIS records pertaining to the processing of Maharaj with respect to naturalization and associated immigration matters. Clarke's Mem. at 21. According to Clarke, this file would show that Maharaj was ineligible for citizenship at the time of his application for naturalization and that he obtained citizenship through fraud and misrepresentation.[7] Mem. Op. at 5. DeFour separately asks the Court to reconsider the same ruling on another theory -- that proof of citizenship is subject to a higher standard of proof in a criminal prosecution than in a naturalization proceeding and, hence, that he is entitled to introduce evidence that Maharaj obtained citizenship by fraud and thus "did not possess the standing of a native [U.S.] citizen." DeFour Mot. at 1-4. The Court denies both motions.

Clarke argues that he should be allowed to introduce Maharaj's "A file" into evidence pursuant to Fed. R. Evid. 806, which authorizes a party to attack the credibility of a declarant when a hearsay statement is admitted into evidence.[8] Although Clarke styles his motion as

---

[7] As the Court noted in its earlier decision, Demerieux contends that the evidence would show that Maharaj deserted the U.S. military, entered the United States illegally, obtained a "green card" through misrepresentation and concealment of material facts, failed to disclose criminal conduct, and was otherwise not of good moral character. See Mem. Op. at 5 n.4 (citing Demerieux's First Mot. to Dismiss at 2-17 & Exhibits A-L).

[8] Rule 806 states:

When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

seeking to introduce evidence to attack the credibility of the declarants (presumably, Balram Maharaj or the agency officials signing the documents at issue), it is clear that this is only a repackaged attempt to litigate Maharaj's qualifications for citizenship. See Clarke's Mem. at 15 (""the defense has repeatedly sought to introduce evidence . . . to determine whether the decedent's certificate of naturalization was fraudulently obtained"). As discussed at length in the Court's original decision (see Mem. Op. at 7-13, 18-21) -- and further confirmed by cases holding that certificates of naturalization and passports are admissible as complete and conclusive evidence of citizenship -- "the jury may not decide the validity of Maharaj's citizenship" and hence defendants may not relitigate whether Maharaj was qualified for U.S. citizenship. Id. at 12-13, 18-19. The exclusive process for challenging the validity of the grant of a naturalization petition is through a revocation of naturalization proceeding pursuant to 8 U.S.C. § 1451.

DeFour makes a somewhat different argument in seeking to admit the evidence of Maharaj's alleged misrepresentations. He contends that he is entitled to an opportunity to introduce evidence of fraud in the naturalization process based on United States v. Meza-Soria, 935 F.2d 166, 169 (9th Cir. 1991), a case that addressed whether an agency's factual findings in a deportation hearing are sufficient to establish a defendant's alienage in a prosecution for illegal reentry by an alien after deportation. There, the court held that because the burden of proving alienage in a deportation hearing (clear and convincing evidence) was lower than the proof of alienage required for a criminal offense (beyond a reasonable doubt), "it would be quite improper to establish the alienage element of the reentry offense through the use of factual findings in the deportation hearing." Id. at 169 (emphasis added). Hence, it held that the defendant was entitled to defend himself introducing evidence that he was not an alien. Id. at 170.

Nothing in Meza-Soria, however, suggests that a defendant in a criminal prosecution is entitled to offer proof that a categorically different document -- a certificate of naturalization --

was improperly issued. First, the legal principle driving the result in Meza-Soria, is that, given the different burdens of proof, "factual findings" from a separate civil proceeding -- whether a civil judicial or civil administrative hearing such as deportation -- cannot be given preclusive effect in a criminal proceeding. 935 F.2d at 169-70; see also United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994) (summarizing Meza-Soria as holding that "factual findings in a prior deportation proceeding . . . do not establish the alienage element in later criminal prosecutions"). A certificate of naturalization, in contrast, is considered "complete evidence" of citizenship not because of the factual findings stated therein, but because Congress has provided in 8 U.S.C. § 1443(e) that it is evidence of citizenship equal in force to a judicial order of naturalization. See Magnuson, 911 F.2d at 333. Moreover, that citizenship status cannot be taken away except in accordance with the exclusive process for revocation outlined in 8 U.S.C. § 1451. In a related vein, Meza-Soria is, on its face, limited to the admissibility of deportation orders to establish alienage and simply does not speak to certificates of naturalization, which are governed by entirely different statutory provisions. 925 F.2d at 170 ("All we hold is that deportation orders do not establish the alienage element").

In short, DeFour's contention that he is entitled to an opportunity to introduce evidence of fraud in the naturalization process conflates two distinct issues -- whether Maharaj was qualified for U.S. citizenship and whether Maharaj was granted U.S. citizenship. As discussed above, the certificate of naturalization establishes that Maharaj was granted U.S. citizenship and may not be collaterally attacked except through a revocation proceeding under § 1451(a). See also Mem. Op. at 5-13, 18-21. The separate question of whether Maharaj was, in fact, qualified for U.S. citizenship (i.e., did he obtain citizenship through fraud) is irrelevant to this proceeding unless

his citizenship is revoked following the statutory revocation process.[9]  Therefore, the Court will

deny the requests made by Clarke and DeFour to introduce documents from Maharaj's "A file" or

other documents allegedly showing that Maharaj obtained his citizenship by fraud.

## CONCLUSION

For the foregoing reasons, Clarke's and DeFour's motions for reconsideration of the

Memorandum Opinion and Order dated May 8, 2009, will be denied.  The request to strike the

certificate of naturalization (GX 303-F) and passport dated September 28, 2000 (GX 306) will be

denied.  The request to strike the passport dated April 10, 1995 (GX 302) will be granted.  The

request to exclude the supporting documentation pertaining to the passports (GX 303-A through

F and GX 305-A through J) will be denied.  A separate Order accompanies this Memorandum

Opinion.


_____
/s/
JOHN D. BATES
United States District Judge

Date:   July 2, 2009

---

[9]  As the Court explained when it denied defendants' motion to stay the trial, in the
unlikely event that defendants prevail on their mandamus petition seeking revocation of
Maharaj's citizenship pursuant to § 1451(a) (Clarke v. Holder, Civil Action No. 09-0753), "they
may raise the lack of citizenship in post-trial motions before this Court or, if convicted, on their
direct appeal" or through a motion to set aside their convictions under 28 U.S.C. § 2255.  See
Mem. Op. at 17.