UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA

v.

ANDERSON STRAKER,
WAYNE PIERRE,
RICARDO DE FOUR,
ZION CLARKE,
KEVIN NIXON,
KEVON DEMERIEUX,

    **Defendants.**

Criminal Action No. 06-102 (JDB)

---

## MEMORANDUM OPINION

Petitioners Anderson Straker, Wayne Pierre, Ricardo De Four, Zion Clarke, Kevin Nixon, and Kevon Demerieux were tried and found guilty of two offenses: conspiracy to commit hostage taking, and hostage taking resulting in death. They were sentenced to concurrent terms of life imprisonment on each count, followed by five years' supervised release. After exhausting their direct appeals, petitioners have now filed motions to vacate their sentences pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of their former trial and appellate counsel. The United States has filed a motion in each case requesting that the Court issue an order finding that petitioners have waived the attorney-client privilege with respect to their ineffective assistance of counsel claims, and authorizing petitioners' former counsel to disclose certain information to the government.[1] Petitioners Pierre, Straker, and Demerieux filed responses to the government's

---

[1] Gov't's Mot. for Order (Straker) [ECF No. 916]; Gov't's Mot. for Order (Pierre) [ECF No. 917]; Gov't's Mot. for Order (De Four) [ECF No. 920]; Gov't's Mot. for Order (Clarke) [ECF No. 930]; Gov't's Mot. for Order (Nixon) [ECF No. 931]; Gov't's Mot. for Order (Demerieux) [ECF No. 945]. Another defendant, Christopher Sealey, only recently filed his motion to vacate and the government has yet to file a similar motion in his case. See Mot. to Vacate (Sealey) [ECF No. 953].

motion, asserting that the government's proposed order should be narrowed in certain respects, and requested a protective order limiting the use of communications between the government and petitioners' former counsel.[2] For the reasons explained below, the United States' motions for an order finding waiver of attorney-client privilege will be granted, but the government's proposed order will be modified as described below based on petitioners' arguments.

## I. LEGAL STANDARD

It is well settled that when a habeas petitioner raises a claim of ineffective assistance of counsel, courts find a corresponding waiver of attorney-client privilege with respect to former counsel on matters necessary to decide the claim. See, e.g., United States v. Pinson, 584 F.3d 972, 978 (10th Cir. 2009) ("Given the ample, unanimous federal authority on point, we hold that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim."); United States v. Lewis, 824 F. Supp. 2d 169, 172 (D.D.C. 2011) ("[W]here a claim of ineffective assistance of counsel is asserted, there is an 'implied waiver' of the [attorney-client] privilege.") (alteration in original) (citing Bittaker v. Woodford, 331 F.3d 715, 719–20 (9th Cir. 2003)).

The waiver of attorney-client privilege in situations involving claims of ineffective assistance of counsel is also addressed in Rule 1.6 of the District of Columbia Rules of Professional Conduct. D.C. Rule 1.6 states: "A lawyer may use or reveal client confidences or secrets . . . (3) . . . to the extent reasonably necessary to respond to specific allegations by the client concerning the

---

[2] Pet'r's Resp. to Mot. for Order (Pierre) [ECF No. 925]; Pet'r's Resp. to Mot. for Order (Straker) [ECF No. 926]; Pet'r's Resp. to Mot. for Order (Demerieux) [ECF No. 947]. Petitioners De Four, Clarke, and Nixon have not responded to the government's motion and their deadline to do so has now passed.

lawyer's representation of the client."[3] D.C. Rule of Prof'l Conduct 1.6(e)(3); see also D.C. Bar Ethics Opinion No. 364 ("Ethics Op. 364"), <u>Confidentiality Obligations When Former Client Makes Ineffective Assistance of Counsel Claim</u> (2013).

## II. ANALYSIS

Petitioners acknowledge that their claims of ineffective assistance of counsel operate as a waiver of the attorney-client privilege, but they argue that the waiver is limited, and the government's proposed order should be narrowed in certain respects. See Pet'r's Resp. to Mot. for Order (Pierre) at 1; Pet'r's Resp. to Mot. for Order (Straker) at 3; Pet'r's Resp. to Mot. for Order (Demerieux) at 1. Specifically, petitioners contend that: (1) the government's motion is premature, and the Court should police the scope of the waiver by conducting an in camera and ex parte review of specific communications before authorizing disclosure; (2) the government's proposed order is overbroad; (3) the government should be prohibited from having ex parte communications with petitioners' former counsel; and (4) a protective order should be entered to ensure that any privileged disclosures cannot be used against petitioners outside of this proceeding or any appeal thereof. The Court addresses these arguments sequentially below.

### A. In Camera and Ex Parte Review Prior to Disclosure

Petitioners argue that it would be "premature for the Court to find that the attorney-client privilege has been waived with regard to any specific communications [between petitioners and former counsel]." Pet'r's Resp. to Mot. for Order (Straker) at 4; see also Pet'r's Resp. to Mot. for Order (Demerieux) at 1. Instead, citing <u>Johnson v. Alabama</u>, 256 F.3d 1156 (11th Cir. 2001), petitioners contend that a better procedure is to have former counsel submit presumptively

---

[3] D.C. Rule 1.6(b) defines "confidences" as information protected by the attorney-client privilege under applicable law, and defines "secrets" as other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client. See D.C. Rule of Prof'l Conduct 1.6(b).

protected communications by affidavit for the Court's and petitioners' in camera and ex parte review before allowing disclosure to the government. See Pet'r's Resp. to Mot. for Order (Straker) at 4–5; see also Pet'r's Resp. to Mot. for Order (Demerieux) at 2.

The government responds that this approach "is virtually unprecedented in this jurisdiction." See Gov't's Reply (Straker, Pierre) [ECF No. 946] at 5. Petitioners have not cited any authority from this Circuit (nor is the Court aware of any) where a court has adopted this approach.[4] Moreover, neither D.C. Rule of Professional Conduct 1.6 nor Ethics Opinion 364—which addresses a lawyer's confidentiality obligations when a former client makes an ineffective assistance of counsel claim—appears to endorse such a procedure. D.C. Rule 1.6 permits former counsel to make disclosures to government counsel outside a court setting (and outside the supervision of current counsel) so long as the disclosures are "reasonably necessary to respond to specific allegations" of ineffectiveness. D.C. Rule of Prof'l Conduct 1.6(e)(3); see also Ethics Op. 364 at 10 ("D.C. Rule 1.6(e)(3) permits a defense lawyer . . . to make, <u>without judicial approval or supervision</u>, such disclosures of information protected by Rule 1.6 as are reasonably necessary to respond to the client's specific allegations about the lawyer's performance.") (emphasis added). Hence, the Court agrees with petitioner Demerieux's observation that "[t]he decision of disclosure is one the former counsel must make, after taking into account the various considerations set forth in Rule 1.6 and Ethics Opinion 364." Pet'r's Resp. to Mot. for Order (Demerieux) at 1.

---

[4] Indeed, in United States v. Bey Cross, the government filed a motion substantively identical to the one at issue here and petitioner responded and requested court supervision of disclosures through in camera and ex parte review. See Pet'r's Resp. to Mot. for Order [ECF No. 430] at 5, Bey Cross, No. 09-281 (CRC) (D.D.C.). That court adopted the government's proposed order without any further explanation, and in doing so declined petitioners' request for in camera and ex parte review. Jan. 18, 2017 Order [ECF No. 460], Bey Cross, No. 09-281 (CRC) (D.D.C).

Moreover, petitioners' reliance on non-binding precedent of Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001), is unpersuasive. There is no explanation in Johnson concerning why the court deemed an in camera hearing appropriate in the particular circumstances of that case. And the court did not make any broader statement about when it is appropriate to adopt such an approach in other cases.

4

Accordingly, the Court declines to adopt petitioners' request for a preliminary in camera and ex parte review of communications with former counsel.

### B. Overbreadth of Government's Proposed Order

Petitioners argue that the government's proposed order is overbroad in two ways. To begin with, they object to the government's order to the extent that it suggests that petitioners' former counsel are <u>required</u> to disclose privileged information to the government. See Pet'r's Resp. to Mot. for Order (Pierre) at 1–2; Pet'r's Resp. to Mot. for Order (Straker) at 1; Pet'r's Resp. to Mot. for Order (Demerieux) at 1–2. In reply, the government agreed with petitioners on this point and emphasized that the government has only requested that the Court "merely '<u>authorize</u>' disclosure of privileged communications, not mandate such disclosures." See Gov't's Reply (Straker, Pierre) at 5. D.C. Rule 1.6 makes it clear that "a lawyer <u>may</u> use or reveal client confidences or secrets . . . to the extent reasonably necessary to respond to specific allegations by the client concerning the lawyer's representation of the client." D.C. Rule of Prof'l Conduct 1.6(e)(3) (emphasis added). Further, Ethics Opinion 364 provides that former counsel's decision to disclose is "permissive, not mandatory" and "the lawyer may choose not to respond because, for example, the lawyer may think the disclosure may harm the client, [or] the prosecutor already has the information necessary to respond to the claim." Ethics Op. 364 at 7. Hence, it is clear that former counsel are permitted, but not required, to disclose information to the government.

Petitioners next object that the government's proposed order expansively requires former counsel to provide "any relevant documents in their possession" and to disclose "otherwise confidential or privileged information" if it simply "relates to the defendant's claims of ineffective assistance." Pet'r's Resp. to Mot. for Order (Pierre) at 3 (internal quotations omitted); see also Pet'r's Resp. to Mot. for Order (Straker) at 1, 3; Pet'r's Resp. to Mot. for Order (Demerieux) at 1–

5

2. Petitioners contend that this broad language encompasses not only attorney-client privileged information but also additional information that former counsel might otherwise have an ethical duty to keep confidential. D.C. Rule 1.6 protects not only privileged information (i.e., "confidences") but also "secrets" or "other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or . . . detrimental, to the client." Ethics Op. 364 at 2 (quoting D.C. Rule of Prof'l Conduct 1.6(e)(3)). A lawyer's ethical confidentiality obligation under D.C. Rule 1.6 is not waived when a former client files an ineffective assistance of counsel claim. Id. Rather, in response to an ineffective assistance claim, a lawyer's discretion to voluntarily reveal protected information is limited to the extent to which the disclosure is "reasonably necessary to respond to specific allegations by the [former] client concerning the lawyer's representation of the client." Id. at 2 (alteration and emphasis in original) (quoting D.C. Rule of Prof'l Conduct 1.6(e)(3)).

The Court concludes that both of the petitioners' overbreadth concerns are sufficiently addressed by incorporating the "reasonably necessary" language from D.C. Rule 1.6 into the government's proposed order.[5] Hence, that will be done here.

### C. Ex Parte Communications with Former Counsel

Petitioners also argue that the government should be prohibited from ex parte communications with petitioners' former counsel, outside the supervision of petitioners' current counsel. See Pet'r's Resp. to Mot. for Order (Straker) at 6–7; Pet'r's Resp. to Mot. for Order (Demerieux) at 1–2. In support of this argument, petitioners rely on an Opinion issued by the American Bar Association's Standing Committee on Ethics and Professional Responsibility interpreting Model Rule 1.6, which states as follows:

---

[5] The government does not object to the inclusion of the "reasonably necessary" language in its proposed order. See Gov't's Reply (Straker, Pierre) at 7 n.5.

6

> It is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable. It will be rare to confront circumstances where trial counsel can reasonably believe that such prior, ex parte disclosure, is necessary to respond to allegations against the lawyer.

ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 10-456, at 5 (2010). However, this ABA Opinion is not binding on this Court, interpreted Model Rule 1.6 (which is different than D.C. Rule 1.6) and is contrary to the controlling ethics opinion from this jurisdiction. See Ethics Op. 364 at 1 ("[T]he Model Rule allows disclosure of protected information only in the context of an actual or contemplated proceeding, while the D.C. Rule allows such disclosure . . . regardless of whether a proceeding is pending or even contemplated."); see also id. at 9 ("[W]e do not share the [ABA] Opinion's view that extrajudicial disclosure rarely will be justifiable."). Moreover, courts in this District have regularly permitted the government to communicate with former counsel without the need for supervision by the court or current counsel. See, e.g., Jan. 18, 2017 Order [ECF No. 460], Bey Cross, No. 09-281 (CRC) (D.D.C.) (declining to adopt petitioner's request to prohibit ex parte communications between the government and former counsel); Aug. 17, 2016 Order [ECF No. 172], United States v. Talbott, No. 11-357 (RMC) (D.D.C.) (denying petitioner's request for a protective order prohibiting ex parte communication between the government and petitioner's former attorneys); June 12, 2015 Order [ECF No. 144], United States v. Mohammed, No. 06-357 (CKK) (D.D.C.) (permitting former counsel to discuss their representation of the petitioner with the government as it relates to the petitioner's claims of ineffective assistance of counsel); Apr. 20, 2011 Order [ECF No. 67], United States v. Lewis, No. 07-119 (GK) (D.D.C.) (declining to follow ABA Formal Opinion 10-456 and denying petitioner's motion in limine to bar former defense counsel from speaking with government counsel).

The cases cited by petitioner Straker to support this request are unpersuasive. See Pet'r's Resp. to Mot. for Order (Straker) at 6–7. In both Hudson and Hicks, the court relied on the non-binding (and distinguishable) ABA Opinion and West Virginia Rule of Professional Conduct 1.6 (which differs from D.C. Rule 1.6) when deciding to grant a protective order prohibiting ex parte communication. See Hudson v. United States, 2011 WL 3667602, at *2 (S.D. W. Va. Aug. 22, 2011); Hicks v. United States, 2010 WL 5441679, at *3 (S.D. W. Va. Dec. 28, 2010). In Stone, the court merely held that "in the circumstances of this case" it was best to proceed with a Rule 6 deposition of former counsel rather than a private interview between the U.S. Attorney and former counsel. See Stone v. United States, 2011 WL 2194415, at *2 (D. Me. June 6, 2011). Straker also points to Soomai, a case in this District in which the court granted petitioner's request prohibiting ex parte communications between the government and former counsel. See United States v. Soomai, 928 F. Supp. 2d 170, 173 (D.D.C. 2013). But Soomai is distinguishable from this case for several reasons. To begin with, in Soomai the government did not oppose petitioner's request to bar ex parte communications, as the government has done here. Id. Moreover, the request in Soomai was based on ABA Formal Opinion 10-456. See Ex. 2 to Def.'s Mot. for Recons. [ECF No. 95–2], United States v. Soomai, No. 06-363 (RWR) (D.D.C.) at 2–3. And although Ethics Opinion 364 was issued about one month prior to the court's decision in Soomai, it does not appear that any party brought the opinion to the court's attention. Since Soomai was decided, other courts in this District have denied similar requests and declined to follow ABA Formal Opinion 10-456. See Aug. 17, 2016 Order, Talbott, No. 11-357 (RMC) (D.D.C) (denying petitioner's request to prohibit ex parte communication because ABA Formal Opinion 10-456 is not the governing rule in this district); Apr. 20, 2011 Order, Lewis, No. 07-119 (GK) (D.D.C.) (same). In accordance

with these decisions and Ethics Opinion 364, this Court will not prohibit the government from communicating with former counsel outside the supervision of current counsel.

### D. Protective Order

Finally, petitioners argue that a protective order should be entered limiting the use of any privileged communications that are disclosed to the instant proceeding and any appeal. See Pet'r's Resp. to Mot. for Order (Pierre) at 5–6; Pet'r's Resp. to Mot. for Order (Straker) at 7–9. The Court takes seriously the concerns underlying petitioners' request and acknowledges that the misuse of privileged communications could result in prejudice to petitioners in a future proceeding. There appears to be little case law on this issue and no D.C. Circuit law on point. Ethics Opinion 364 and D.C. Rule 1.6 both appear to endorse the use of protective orders. See Ethics Op. 364 at 1 ("Where appropriate, the lawyer should take steps, such as seeking a judicial protective order . . . to limit the use of such disclosures to the [ineffective assistance of counsel] proceeding"); D.C. Rule of Prof'l Conduct 1.6, cmt. 21 ("[D]isclosure [under Rule 1.6] should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.").

As petitioners explain, courts in other jurisdictions have endorsed the use of protective orders to prevent prosecutors from using information obtained during the adjudication of an ineffective assistance of counsel claim in a subsequent prosecution of the petitioner. In Bittaker, for example, the Ninth Circuit affirmed a protective order prohibiting the use of privileged attorney-client materials obtained in discovery for any purpose other than litigating the federal habeas petition. Bittaker v. Woodford, 331 F.3d 715, 728 (9th Cir. 2003). The court reasoned that:

> [i]f a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free. Giving the prosecution the advantage of obtaining the defense casefile—and possibly even forcing the first lawyer to testify against the client during the second trial—would assuredly not put the parties back at the same starting gate.

Id. at 722–23; see also Lambright v. Ryan, 698 F.3d 808, 818 (9th Cir. 2012) (explaining that the district court had a duty to enter a protective order and noting that petitioner's attorney-client privilege waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim in the federal habeas proceeding); United States v. Nicholson, 611 F.3d 191, 217 (4th Cir. 2010) (applying Bittaker to preclude the use at resentencing of privileged material revealed in connection with the successful ineffective assistance of counsel claim).

The government relies on one case to oppose petitioners' request that seems less on point than the cases cited by petitioners. See Gov't's Reply (Straker, Pierre) at 4 (citing United States v. Suarez, 820 F.2d 1158 (11th Cir. 1987)). In Suarez, the Eleventh Circuit held that once plea counsel testified at a pretrial hearing to withdraw a guilty plea with his former client's consent and pursuant to an express waiver of the attorney-client privilege, the attorney-client privilege could not bar his testimony on the same subject at trial because his testimony was already in the public domain pursuant to an initial waiver of privilege. 820 F.2d at 1160–61. The appellant in Suarez argued that the case was controlled by the rationale expressed in Simmons v. United States, 390 U.S. 377 (1968), a case where the Supreme Court recognized that a defendant who knows that his testimony could be used against him in future proceedings may be deterred from presenting the testimonial proof necessary to prevail on his claim. See Suarez, 820 F.2d at 1161; see also Simmons, 390 U.S. at 394 ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another."). But the Eleventh Circuit found that because appellant did not present the Simmons rationale to the district court as a basis to object to his plea counsel's

10

testimony, he had not preserved this argument for appeal. Suarez, 820 F.2d at 1161. The court in Bittaker addressed the Suarez decision and noted that the Eleventh Circuit did not consider the Simmons rationale or the argument that defendant had only made a limited waiver of the privilege. See Bittaker, 331 F.3d at 727. The court in Bittaker concluded that "[w]e are reasonably confident that, had the Suarez court considered these arguments, it would have reached a different conclusion." See id.

Although there is no D.C. Circuit law on point, cases from other circuits and the governing ethics authority in this jurisdiction support petitioners' request to limit the use of the disclosed information to the ineffective assistance proceeding, including any appeal. The Court will accordingly modify the language in the government's proposed order to make this limitation clear. Finally, in its proposed order the government requests that this limitation not preclude the government from prosecuting the petitioners for perjury should it be provided with proof of perjury in this § 2255 proceeding. Petitioner Straker does not squarely address this request, and neither petitioner Pierre nor petitioner Demerieux offers more than a conclusory statement that it should not apply. The Court will therefore maintain this provision of the government's proposed order, but make clear that privileged communications may not be utilized in any such prosecution.

### III. CONCLUSION

For the reasons explained above, the Court:

(1) finds that the petitioners waived the attorney-client privilege when they filed motions pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel by former trial and appellate counsel; and

(2) concludes that the District of Columbia Rules of Professional Conduct, particularly Rule 1.6(e)(3), permit petitioners' trial and appellate counsel, and any other person acting on the petitioners' behalf in this case, to disclose to government counsel information that is reasonably necessary to respond to the petitioners' specific allegations of ineffective assistance, even if there might otherwise be a duty to keep such information confidential.

11

A separate order is being filed on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 10, 2017