UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ZION CLARKE,<br>RICARDO DEFOUR,<br>KEVON DEMERIEUX,<br>ANDERSON STRAKER,<br>WAYNE PIERRE,<br>CHRISTOPHER SEALEY, and<br>KEVIN NIXON,<br><br>Defendants. | Criminal No.  06-102 (JDB)<br><br>UNDER SEAL<br><br>FILED<br><br>APR 30 2009<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U S DISTRICT COURT |

## MEMORANDUM OPINION & ORDER

By Memorandum Opinion & Order dated April 16, 2009, the Court granted in part and denied in part five defendants' motions for leave to conduct Rule 15 depositions of witnesses residing in the Republic of Trinidad and Tobago ("Trinidad"), and also ordered the government not to communicate with those witnesses prior to their depositions. Since then, Straker has moved for leave to take one additional deposition, Demerieux seeks reconsideration of the Order to the extent it denied his motion for depositions, and the government seeks relief from the restrictions on its communications with witnesses before the depositions take place.

**1.      Straker's Motion for Leave to Take One Additional Rule 15 Deposition (ECF #457)**

Straker seeks leave to conduct the deposition of an additional character witness, Cleo Cabrera, who would testify as to Straker's reputation for truthfulness and peacefulness. Both of these are pertinent character traits in this case and, hence, the testimony sought is material. See Memorandum Opinion & Order at 3-5. Straker's proffer indicates that the witness has known

him most of his life and has had regular contact with him since his childhood; thus, she is qualified to testify as to his character. The witness is unavailable to testify at trial because she is not willing to come to the United States. Although the Court is concerned about the potential for cumulative character testimony, the Court has determined that, in light of the nature of the allegations against Straker, the presentation of two character witnesses is reasonable. Therefore, the deposition of Cleo Cabrera will be permitted.

**II. Demerieux's Motion for Reconsideration (ECF #450)**

Demerieux originally sought to take the depositions of 13 witnesses -- including five witnesses about his past employment status and six witnesses who would testify about his arrest and incarceration in January 2006 and on March 31, 2006, in an effort to discredit the reliability of his statements to the Trinidad police and the FBI. The Court authorized the deposition of one former employer, Gerald Compton, on the understanding that Compton was offered as a character witness. The Court delayed a final ruling on the witnesses pertaining to his arrest and incarceration in light of the pending motion to suppress the statements at issue. However, to aid counsel in planning their upcoming travel to Trinidad, the Court noted that it would provisionally authorize the deposition of Dwayne Gopaul, whose proffered testimony was the most germane to the reliability of Demerieux's statements. See Memorandum Opinion & Order at 8-10. On April 28, 2009, the Court denied Demerieux's motion to suppress, and hence, the statements at issue may potentially be admissible. See United States v. Clarke, --- F. Supp. 2d ---, 2009 WL 1133341 (D.D.C. Apr. 28, 2009). The Court now evaluates Demerieux's requested depositions in light of that ruling and his motion for reconsideration.

Regarding past employers and former co-workers, Demerieux has now clarified that he seeks to depose this group of witnesses to rebut the government's evidence that he had a financial

2

motive to participate in the charged offenses, not as character witnesses. See Demerieux's Mot. for Reconsideration at 2-7. The government aptly points out that even the wealthy commit crimes with a motive to obtaining more money and questions the probative value of evidence of regular employment on the issue of motive to commit the crimes charged. Gov't Opp'n at 5-6. At the same time, the government acknowledges that there is at least "slight probative value" to this type of testimony. Id. The Court agrees that the probative value is minimal, but not knowing exactly how the government will present its case with respect to the issue of financial motive, the Court will allow the proposed depositions of the former employers to proceed -- that is, the previously scheduled deposition of Gerald Compton (now expanded to the subject of Demerieux's overall employment with him) and the deposition of Deosaram Latchman Singh.[1] The Court denies the request to take depositions of one of his relatives and two co-workers -- Witnesses #17, #23, and #24 -- to avoid cumulative testimony. Furthermore, the employers are better positioned to provide testimony as to the financial aspect of Demerieux's employment, in contrast to relatives or co-workers.

Demerieux also contends that he should be allowed to proceed with the depositions of Witnesses #19, 20, 25, 26, 27, and 28, to demonstrate that his statements to the police were not credible considering the alleged police mistreatment of him and/or his brother and considering his family's attempts to arrange for counsel to represent him. Demerieux's Mot. for Reconsideration at 5-6. The Court agrees that Demerieux should be allowed to take the depositions of witnesses with personal knowledge of conduct that calls into question the voluntariness of his statements. See 18 U.S.C. § 3501(a) ("the trial judge shall permit the jury to

---

[1] Singh is unavailable to testify at trial because he lacks a passport and has health problems.

hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances"); United States v. Dickerson, 163 F.3d 639, 643-44 n.6 (D.C. Cir. 1999) (recognizing the requirement to instruct the jury in accordance with 18 U.S.C. § 3501, noting that the instruction is akin to a "credibility" instruction). However, only one witness falls into that category -- Dwayne Gopaul. The other witnesses' proffered testimony either is about how Kern Demerieux was treated by police (Witnesses #25 and #27) -- a matter that is of minimal relevance to Kevin Demerieux's treatment by police -- or about routine incidents of arrest that do not call into question the voluntariness of Demerieux's statements. See Demerieux's First Supplement at 2 (proffering that Witness #19 would testify that "there were many police officers in and around her home" on March 31, 2006, and that "they were armed"); id. at 3 (proffering that Witness #20 would testify that "the police force[d] [Demerieux] from his bed," "shove[d] him into the living room," and "shoved him into a wall").

This leaves Witness #26, who would "testify to arrangements she and the [Demerieux] family made to obtain counsel for [Kevin] Demerieux between . . . January 2006 and his arrest in March 2006." See Demerieux's Second Supplement at 3. However, that proffered testimony is not material to the reliability of Demerieux's statements. The family's alleged attempts to obtain counsel for him are not inconsistent with Demerieux's voluntary decision to make a statement to police without counsel. See Clarke, --- F. Supp. 2d ---, 2009 WL 1133341, at *22-26. Indeed, nothing in the proffer indicates that the family was acting at Demerieux's request. Demerieux's motion for reconsideration as to Witness #26 is therefore denied.

### III. Government's Motion for Reconsideration (filed under seal Apr. 20, 2009)

The government seeks reconsideration of the portion of the Memorandum Opinion &

4

Order prohibiting it from communicating with the Rule 15 witnesses prior to their depositions. See Gov't Mot. for Reconsideration at 5-10. The Court imposed that restriction in response to defense counsel's concern that the Rule 15 deposition process enabled the government "to gain a preview of their trial strategy . . . and gain early access to their witnesses and influence their testimony." Memorandum Opinion & Order at 10. The Court also was responding to general concerns that defense counsel had raised about the government's interviews of the first round of Rule 15 witnesses prior to their depositions. Id. The Court implemented these restrictions acting out of an abundance of caution with respect to defendants' rights under the Fifth and Sixth Amendments to present witnesses in their defense. See generally United States v. Skilling, 554 F.3d 529, 567 (5th Cir. 2009) ("The Sixth Amendment guarantees a criminal defendant the right to present witnesses to establish his defense without fear of retaliation against the witness by the government, and the Fifth Amendment protects the defendant from improper governmental interference with his defense.") (internal quotation marks and citations omitted).

The government correctly points out, however, that there is nothing improper about government counsel interviewing a defendant's witnesses. This Circuit explained in Gregory v. United States, 369 F.2d 185, 188 (D.C. Cir. 1966), that "[w]itnesses are the property of neither the prosecution nor the defense[,]" and hence, "[b]oth sides have an equal right, and should have an equal opportunity, to interview them" -- a principle routinely recognized by other circuits. Id. at 188; see Skilling, 554 F.3d at 567; Kines v. Butterworth, 669 F.2d 6, 9 (1st Cir. 1981); United States v. Scott, 518 F.2d 261, 268 (6th Cir. 1975); Callahan v. United States, 371 F.2d 658, 660 (9th Cir. 1967).

The Court has the discretion to restrict access to an opposing party's witnesses where there has been witness intimidation, harassment, or some other misconduct. See, e.g., United

States v. Soape, 169 F.3d 257, 270 (5th Cir. 1999). However, the record contains no evidence that the government has intimidated or harassed defendants' witnesses or otherwise engaged in misconduct. Defendants imply that government overreaching must have occurred because the first three Rule 15 witnesses deposed this past January "recanted" their earlier statements to defense investigators days after having been interviewed by the government. See Sealey's Opp'n to Gov't Mot. for Reconsideration at 2-3 (filed Apr. 28, 2009). But this is nothing more than a conclusory statement. Indeed, by defendants' own account, they "have no way of knowing precisely why the witnesses changed their statements," and they leap from the lone fact of the interviews to the conclusion that "there is no question it [recanting] was a result of the government's action" -- without proffering a single example of intimidation or harassment. Id. at 3. As is evident from the depositions, and explained in detail by the government, the changes and clarifications in each witness's statement are accompanied by an explanation, and contain no indicia that there was any governmental overreaching. See Gov't Reply in Support of Mot. for Reconsideration at 3-9 (noting, inter alia, that Ms. Zyroon Gajadhar testified that she was not good at estimating height, and Mr. Anand Gajadhar had misunderstood certain defense questions about height) (citing Zyroon Gajadhar Depo. at 36-37 (ECF # 388) and Ananda Gajadhar Depo. at 27-28, 38-42 (ECF #460)). See also Gov't Response to Straker's Mot. to Supplement at 7-8 (noting that Gayadeen Boodhoo's ability to estimate height is in question, based on his inaccurate estimate of FBI Special Agent Jett's height) (citing Boodhoo Depo. at 13-14 (ECF #389)).

In light of Gregory and the absence of any factual record indicating intimidation or harassment of witnesses, the Court will lift the restriction on the government's ability to

6

interview the remaining Rule 15 witnesses prior to their depositions.[2] Defendants have failed to demonstrate that the government has infringed on their Fifth or Sixth Amendment rights to present witnesses in their defense and to be free from improper governmental interference with their defense. Nor does the Court see a basis for exercising its discretion to prohibit altogether the government from conducting interviews of the Rule 15 witnesses.

The Court remains concerned, however, that, notwithstanding the good faith of the government, witnesses may feel constrained to cooperate with the government where interviews take place at a Trinidad police station, as they have thus far. See Anand Gajadhar Depo. at 14 ("Q: [H]ow is it that you ended up down at the Police station? A: [A] guy came over and tell us that . . . they want us to come down at Barataria station because it would be more suitable to discuss the case."). Of course, it is well-established that a witness is under no obligation to participate in pre-trial interviews. See Kines, 669 F.2d at 9 ("a witness may of his own free will refuse to be interviewed by either the prosecution or the defense"). To avoid the misperception by the witnesses -- all Trinidadian -- that their cooperation in the interviews is required by law enforcement personnel, the Court will prohibit the government from interviewing the witnesses at a police station and will also require that government counsel -- rather than the FBI alone -- conduct any interviews of the Rule 15 witnesses prior to their depositions.

Upon consideration of the foregoing, it is hereby

**ORDERED** that [457] Straker's motion for leave to take the deposition of Cleo Cabrera

---

[2] With respect to defendant's concern that the government will gain an unfair tactical advantage by having the ability to interview their witnesses before trial, the government correctly points out that this concern is greatly exaggerated, for the government will in any event know the identity of their witnesses by the time of voir dire -- May 18, now only three weeks away -- and could legitimately attempt to interview those witnesses during the month it would take to put on its case-in-chief. Gov't Mot. for Reconsideration at 7.

is **GRANTED**; it is further

**ORDERED** that [450] Demerieux's motion for reconsideration is **GRANTED IN PART AND DENIED IN PART**; it is further

**ORDERED** that Demerieux may proceed with the Rule 15 depositions of Gerald Compton, Deosaram Latchman Singh, and Dwayne Gopaul; it is further

**ORDERED** that the government's motion for reconsideration is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that the restrictions governing the government's communications with witnesses are modified as follows:

(1) Government counsel may ask defendants' witnesses if they will consent to an interview.

(2) If the witness consents, government counsel may proceed to conduct an interview.

(3) No interviews shall be conducted at a Trinidad police station or other law enforcement office.

/s/
JOHN D. BATES
United States District Judge

Date: April 30, 2009